UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>SONY ELECTRONICS, INC.,<br><br>        Defendant. | No. 12 CV 9628<br>Judge James B. Zagel |

## **MEMORANDUM OPINION AND ORDER**

The Equal Employment Opportunity Commission ("EEOC") brought this suit on behalf of Dorothy Shanks ("Shanks"), alleging violations of Title I of the American with Disabilities Act ("ADA"). Defendant Sony Electronics, Inc. ("Sony") moves for summary judgment on the grounds that this lawsuit is barred by the 300-day statute of limitations set forth in § 706 of Title VII of the Civil Rights Act of 1964. For the following reasons, the motion is DENIED.

    I. FACTUAL BACKGROUND

Shanks is a leg amputee and alleges she is "disabled" under 42 U.S.C. § 12102(1)(A). In October 2010, Shanks worked for Staffmark Investment, LLC ("Staffmark"), a temporary employment agency. Staffmark assigned Shanks to work at Ozbum-Hessey Logistics ("OHL"), a logistics firm, where she inspected screws on Sony televisions. Shanks worked at OHL on October 9 and 11, 2010, for approximately eight to ten hours. At the beginning and end of her two shifts, Shanks signed in and out with supervisors employed by Staffmark.

Shortly after Shanks began her shift on October 11, 2010, a Staffmark employee approached Ms. Shanks and told her that she was being taken off the line where she performed

her job duties because of concerns that she would be bumped into or knocked down by someone. Shanks told the Staffmark Employee that she wanted to continue working and believed that the area where she was working was safe for her. A co-worker of Shanks's was present during this conversation. The Staffmark employee refused to allow Shanks to continue working on the line and led her out of the OHL facility. Staffmark never again sent Shanks on an assignment.

On November 23, 2010, Shanks filed a charge of discrimination against Staffmark alleging that it discharged her and did not offer her employment opportunities because of her disability. An intake interview was held on the same day. Shanks did not indicate in her intake questionnaire or her initial interview that she had any knowledge of anyone from OHL or Sony being involved in the decision to terminate her from her assignment at OHL.

On or about January 4, 2011, EEOC received Staffmark's position statement, in which it stated that it "placed [Shanks] at our client, OHL, on 10/18/2010," and that "Shanks was removed from this temporary assignment at OHL at the client request." The position statement did not identify any specific individuals who were involved in Shanks's termination, and made no mention of Defendant Sony's involvement in the decision to remove Shanks.

On January 5, 2011, EEOC investigator Charles Kolliker ("Kolliker") held a phone interview with Shanks, in which the following exchange took place:

Q [Kolliker]: Where did they [Staffmark] last send you for work?

A [Shanks]: At Sony.

Q: Is this also called OHL?

A: I think so because this was abbreviated but they had nothing but Sony products in their warehouse.

Q: What did OHL stand for?

A: I do not know.

2

Q: Who was your supervisor at OHL?

A: I do not remember her name.

Q: Did you only deal with one person at OHL?

A: Yes, one lady who I used to check in with everyday.

Q: Can you remember this lady's name?

A: I do not know her name.

Q: Was she an employee of Staffmark, or OHL?

A: It was Staffmark, yes.

Later in the same interview, the following exchange took place:

Q: Why were you discharged from Sony?

A: I do not know, they told me that they were taking me off the line because they did not want anyone bumping into me.

Q: Who told you this?

A: The lady that I needed to sign in with everyday.

Q: Was it the same lady everyday?

A: Yes.

Q: Were there any others?

A: No,

Q: Are these Staffmark employees?

A: Yes, yes.

Q: Did you always sign in and sign out with the same person?

A: No, the people I signed in were on days, and sign out were evening staff.

Q: What were your working hours?

> A: From 3 to 11 or from 2 to 11.
>
> Q: How many Staffmark employees were at Sony?
>
> A: I do not know, maybe about 3 of them at the door to check in to the warehouse, then two at the table to sign in. I'd say a good 5 to 6 of them.
>
> Q: Again, do you remember who stated to you that they did not want anyone bumping in to you?
>
> A: It was a Hispanic lady who worked in the evening.
>
> Q: Was there anyone else involved?
>
> A: Tina LNU was sitting to the front waiting for me to come up, sign out and leave the building in the long tables they had in there,
>
> Q: Were these Staffmark employees from Bolingbrook location?
>
> A: Yes.

At some point after receiving Staffmark's position statement, Kolliker informed Shanks that Staffmark had stated that she was removed from her position at OHL at OHL's request. Based on this information, Shanks filed a timely charge against OHL on July 11, 2011.

On August 24, 2011, EEOC asked Staffmark to name any employee "who removed/escorted the charging party out of the OHL facility on October 2010." In response to the EEOC inquiry, Staffmark informed the EEOC that two Staffmark employees, Cecelia Mota and Tina Scott, "may have been involved in events involving Ms. Shanks' assignment at OHL." This was the first time that Staffmark informed the EEOC that these two individuals may have information relevant to the investigation of Shanks's termination.

On August 31, 2011, EEOC interviewed several Staffmark employees, including Cecelia Mota. Mota told EEOC for the first time that the employee who requested Shanks's removal was not employed by OHL, but by Sony. This was the first time that EEOC learned of Sony's involvement in Shanks's termination. On or about September 7, 2011, EEOC informed Shanks

that Staffmark now claimed that the individual who requested her removal was not an OHL employee—as Staffmark had previously represented—but was in fact a Sony employee. On March 5, 2012, Shanks filed her charge against Sony.

II.     ANALYSIS

Defendant Sony has moved for summary judgment on the grounds that Shanks's charge against Sony—filed 511 days after her October 11, 2011 termination—is barred under § 706's 300-day limitations period.[1] 42 U.S.C. § 2000e-5. The EEOC opposes summary judgment based on the federal discovery rule, which provides that a claim does not accrue, and the limitations period does not begin to run, until the "plaintiff discovers (or should if diligent have discovered) both the injury that gives rise to his claim and the injurer . . . or injurers." *Jay E. Hayden Found. v. First Neighbor Bank*, 610 F.3d 382, 386 (7th Cir. 2010); *see also U.S. v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010) ("The discovery rule starts the statute of limitations running only when the plaintiff learns that he's been injured, and by whom"). Specifically, the EEOC argues that Shanks did not know, nor reasonably could have known, of Sony's involvement in her termination until the August 31, 2011 interview with Mott. Starting the clock from that date, her March 5, 2012 (or March 29, 2012—there is a dispute among the parties about the date on which Shanks filed against Sony) charge against Sony was timely.

Nonsense, says Sony. The EEOC was aware of Sony's involvement in Shanks's termination by January 5, 2011—just look at how many times "Sony" is mentioned in Kolliker's notes from his phone interview with Shanks. Even without hard evidence, Sony argues, the EEOC and Shanks were remiss during the first 300 days in not probing further into Sony's

---

[1] One of the conditions precedent to EEOC filing a lawsuit against an employer is a timely charge of discrimination. 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a).

5

*potential* involvement. "Reasonable diligence" is required to invoke the discovery rule, and the EEOC cannot make this showing given Shanks's failure to scrutinize an obvious suspect.

I reject these arguments. Shanks's knowledge that she worked on Sony products and her general references in her January 5, 2011 phone interview to working "at" Sony, do not establish that she knew, or should have known, of Sony's involvement in her termination. Nothing about the events of October 11, 2011 pointed to Sony's involvement: Staffmark hired Shanks, Staffmark sent Shanks to work for OHL, Staffmark employees checked Shanks in and out of work, and a Staffmark employee removed her from the line and escorted her out of the building. There is no evidence that Shanks ever directly interacted with a Sony employee, or had reason to believe that Sony employees were actively directing the activities of the Staffmark employees on the floor at OHL.

Nor did the relationship between Staffmark, OHL, and Sony directly evidence Sony's involvement. This is an unusual case in that it involves several degrees of separation. Sony hired an outside logistics company (OHL) to inspect its televisions sets, and that outside logistics company used a third-party staffing agency (Staffmark) for its labor supply—in other words, the entity that hired Shanks (Staffmark) was a client of Sony's client (OHL). It was not unreasonable for Shanks or the EEOC to rely on Staffmark's position statement, which indicated that only Staffmark and its immediate client, OHL, were involved with Shanks's termination.[2]

Shanks and the EEOC exercised reasonable diligence in this case. Shanks filed charges against Staffmark within six weeks after her termination. Staffmark followed up with a position statement that falsely stated that an OHL employee was responsible for Shanks's termination. The EEOC informed Shanks of OHL's apparent involvement, and Shank's timely filed charges

---

[2] The cases cited by Sony are inapposite—they do not involve questions about the identity of the injurer, let alone the type of multi-employer, third-party hiring at issue in this case.

against OHL. There is absolutely no doubt in my mind that had Staffmark's position statement accurately stated that it was in fact a Sony employee who was involved in her termination, the EEOC and Shanks's actions would have been the same, only directed at the right party.

The apparent inactivity in this case between January and June 2011 is not unreasonable—the EEOC is severely understaffed, overworked, and still managed to move with alacrity when it received a response to its August 24, 2011 inquiry about Staffmark employees involved with removing Shanks from the OHL facility. If the standard for these cases was "perfect diligence," I might fault the EEOC for not asking this question sooner. But that is not the standard, and I do not believe their failure to ask the question until August 2011 rendered the entire investigation unreasonable. I do not know why Shanks waited until March of 2012 before filing charges against Sony when the information came to light in August 2011. But she does not have to explain herself to this Court or anyone else—the 300-day clock did not start ticking against Sony until August 31, 2011.

III. CONCLUSION

For the foregoing reasons, Defendant Sony's motion for summary judgment is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: July 19, 2013